**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| SHELTON CHARLES, | § | |
| | § | |
| v. | § | A-06-CA-158 LY |
| | § | |
| TEXAS LOTTERY COMMISSION AND | § | |
| GARY GRIEF IN HIS INDIVIDUAL AND | § | |
| OFFICIAL CAPACITY | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Gary Grief's Motion for Summary Judgment on Qualified Immunity filed September 26, 2006 (Clerk's Doc. No. 6).  The District Court referred the dispositive motion to the undersigned Magistrate Judge for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. BACKGROUND

Plaintiff is a former employee of the Texas Lottery Commission ("the Commission").  During his tenure there – he was employed as a computer systems analyst, and was evidently promoted several times – Plaintiff became frustrated with what he felt to be the Commission's misuse of government funds and (in his view) its languishing Disaster Recovery Site, a project designed to protect vital information in case a natural disaster ever struck the Commission's physical footprint. Plaintiff also complains that the Commission routinely violated the Texas Open Records Act

("TORA") and that racial discrimination was rampant at the Commission.[1]  Specifically, Plaintiff felt the Commission "had treated himself and other minority employees in a racially discriminatory manner in terms of higher salary, preferential treatment and promotions for non-minority employees," *see* Plaintiff's Original Petition, at 4 (Clerk's Doc. No. 1) (attached to Defendants' Notice of Removal), and that he was part of meetings, the point of which were to discuss schemes for the Commission to avoid have to produce documents (pursuant to TORA) concerning the Disaster Recovery Site.  *Id.* at 5.

After making his complaints known to the Commission's upper-management, including Grief – and not getting what he felt to be an adequate response (in fact, Plaintiff got no response) – Plaintiff sent an email detailing his concerns to some of the members of the Texas Legislature, with Grief's and an institutional Commission's email addresses copied.  Two days after sending the email, Plaintiff was approached by his supervisor, Joe Goebler, and a human resources manager, John Shaw, to discuss the email to the legislators.  The meeting was taped.  Plaintiff, feeling like he was "being put on the spot," asked Goebler and Shaw to reduce their questions to writing and he would answer each in turn "and run them by [his] representation."  *See* Plaintiff's Response, Exh. C at 9. Later that day, Grief fired Plaintiff for insubordination because, according to Grief, Plaintiff refused to answer's Goebler's and Shaw's questions.  Plaintiff subsequently brought suit against the Commission and Grief in his individual capacity alleging that his employment was terminated in violation of the Texas Whistleblower Act, and that his termination was unlawful retaliation for the

---

[1]Plaintiff is African-American.

exercise of his First and Fourteenth Amendment rights.  In response, Grief, in his individual capacity, filed a motion for summary judgment claiming that he is entitled to qualified immunity.[2]

## II.   DISCUSSION

### A.    Standard of review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the nonmoving must set forth specific facts showing that there is a genuine issue for trial. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.1992).

The Court begins its determination by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir.1992).  It then reviews the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the nonmoving party. *See id.*  If the nonmoving party sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994).

---

[2]Grief's motion spends two sentences talking about Plaintiff's Whistleblower Act claim, and it is subsumed within his § 1983 argument.  If Grief is indeed moving for summary judgment on the Whistleblower Claim, then the Court finds that issue inadequately briefed.  Therefore, the Court must assume that Grief only moved for a partial summary judgment, and will treat his motion as such.

**B.**     **§ 1983 First Amendment Retaliation Claim**

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.  *Atteberry v. Nocona Gen. Hosp.* 430 F.3d 245, 253 (5th Cir.2005) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc) (per curiam)). To carry this burden in a § 1983 suit a plaintiff must satisfy a two-prong test.  In *Hope v. Pelzer*, the Supreme Court clarified the contours of the two-prong test.  536 U.S. 730 (2002); *see also Roe v. Texas Dept. of Protective and Regulatory Serv.*, 299 F.3d 395, 408-09 (5th Cir. 2002) (adopting *Hope* articulation of standard).  First, the court must evaluate whether a "plaintiff's allegations, if true, establish a constitutional violation."  *Hope*, 536 U.S. at 736.  Second, if a constitutional violation is found to have occurred, the court must determine whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 739.

The *Hope* Court also clarified the standard for a constitutional right to be clearly established. Its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Id*. (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In *Hope*, the Court clarified that the factual situation from which the pre-existing constitutional right developed does not have to be "fundamentally similar" to the one before a court when addressing qualified immunity.  *Id.* at 740.  Rather, qualified immunity can be overcome as long as "prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."  *Id*.  The Court concluded that "officials can still be on notice that their

4

conduct violates established law even in novel factual circumstances." *Id.* at 741. The appropriate inquiry, therefore, is "whether the state of the law [at the time of the violation] gave [defendants] fair warning that their alleged treatment of [plaintiff] was unconstitutional." *Id.*

    **1.**    **Whether Defendant Grief's Acts Constitute A Constitutional Violation**

In a recent case, the Supreme Court held that "when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* 126 S.Ct 1951, 1960 (2006). The prevailing doctrine attempts to achieve a balance between the speech rights of public employees and the obvious needs of governments, as employers, to manage those employees and the matters on which they speak out. *Id.* "The problem in any case," the Court stated, "is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 1957 (citing *Pickering v. Bd. of Ed. Of Township High School Dist. 205*, 391 U.S. 563, 568 (1968). The Fifth Circuit has further cautioned "that a stronger showing [by the governmental employer] may be necessary if the employee's speech more substantially involved matters of public concern." *Commc'n Workers of Am. v. Ector County*, ---- F.3d ----, No. 03-50230, 2006 WL 2831142 at *6 (5th Cir. Oct. 5, 2006) (citing *Connick v. Myers*, 461 U.S. 138, 152 (1983)). Moreover, the governmental employer's burden in the balancing process is reduced not only by the extent to which the employee's speech is less than substantially on a matter of public concern but also by the extent to which the employer's challenged speech restriction is limited or minimal. *Id*

The Fifth Circuit has set forth the framework for determining when a public employee's speech rights have been violated: "To prevail on a § 1983 First Amendment retaliation claim, a public employee must establish the following: (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) his speech motivated the employer's adverse action. *Oscar Renda Contracting, Inc. v. City of Lubbock, Texas*, 463 F.3d 378, 382 (5th Cir. 2006).

### a.      Public Concern

There is no question, and neither side disputes, that Plaintiff's firing constituted an adverse employment action, so the Court turns to the second element of the claim.  With respect to whether an employee's speech addresses a matter of public concern a court is to consider the speech for which the employee was disciplined, not some other speech.  *Commc'n Workers of Am. v. Ector County*, 2006 WL 2831142 at *7. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Id*. (citing *Connick*, 461 U.S. at 147-48).  And, "a communication  rises to the level of public concern if a person speaks primarily as a citizen rather than as an employee." *Id*. at *7 (citing *Dorsett v. Bd. of Trustees State Colleges & Universities*, 940 F.2d 121, 124 (5th Cir.1991)).

The Fifth Circuit has repeatedly held that  "[t]here is perhaps no subset of matters of public concern more important than bringing official misconduct to light." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005); *Branton v. City of Dallas*, 272 F.3d 730, 746 (5th Cir. 2001); *Davis v. Ector County, Tex.*, 40 F.3d 777, 782 (5th Cir.1994); *see also Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir.1996) (holding that "speech made in the role as employee" can be of

public concern when it "involv[es] the report of corruption or wrongdoing to higher authorities.").
It is clear, and Grief does not appear to dispute that the content of Plaintiff's email regarded matters
of public concern; official misconduct in allegedly misappropriating millions of taxpayer dollars, and
alleged institutionalized race discrimination are, almost needless to say, matters of public concern.
Grief, however, argues that because Plaintiff's email was work-related and part of his job duties at
the Commission, *Garcetti* bars his First Amendment claim.

Grief does not include within his summary judgment evidence a description of Plaintiff's job
duties and Plaintiff states in his affidavit that he sent the emails in his capacity as concerned citizen,
not as part of his job duties. *See* Plaintiff Shelton Charles' Response, Exh. 1, p. 3-4. This is clearly
a material issue of genuine fact properly resolved at trial. In any event, the Court finds it difficult
to swallow the assertion that part of Plaintiff's regular job duties was to send emails to Texas state
legislators reporting on the status of the Disaster Recovery Site, much less that it included reporting
such things as his employer, the Commission, misspending (or misappropriating) millions of dollars
on a phantom Disaster Recovery Site and hiding this information from the public. *See* Plaintiff
Shelton Charles Response, Exh. B. In *Garcetti*, the employee retaliation claim was based on a memo
that Ceballos (Respondent), an assistant district attorney, wrote to his supervisor regarding ostensibly
nefarious statements made in a probable cause affidavit by an officer, and followed that up with a
disposition memo recommending that the case be dismissed. 126 S. Ct. at 1955-56. The Supreme
Court found it "controlling" that Ceballos' memo was written "as a prosecutor fulfilling his
responsibility to advise his supervisor about how best to proceed with a pending case." *Id*. at 1959-
60. In other words, Ceballos was doing what assistant district attorneys do. *Id.* at 1960. "In the
same way," the Court continued, "[Ceballos] did not speak as a citizen by writing a memo that

addressed the proper disposition of a pending criminal case.  When he went to work and performed

the tasks he was paid to perform Ceballos acted as a government employee."  *Id*.

Grief thus misconceives the rule set out in *Garcetti*.  It is not whether the speech was "work-related" but whether Plaintiff wrote the email in his capacity as a computer systems analyst.

Although Grief makes much of the fact that the email references Plaintiff's status as a Commission

employee, it is obvious that the central purpose in that gesture was to give credibility to the claims

that followed (the alleged official misconduct regarding the Disaster Recovery Site and alleged race

discrimination).   Furthermore, the email was sent from a private email address (an Earthlink

account), gave his home address, and his home telephone and cell phone numbers.  All of this is

enough summary judgment evidence to show that the email related to a matter of public concern and

was not part of Plaintiff's official duties.  *Id*.; *see also Davis v. Ector County, Tex.*, 40 F.3d 777, 783

(5th Cir. 1994) (looking to form and context – especially how appellant addressed letter and gave

his home address – as additional evidence that it dealt with a matter of public concern).

### b.    Employer Interest

The third element of a First Amendment retaliation claim is a determination of whether the

employee's interest in commenting on matters of public concern outweighs the employer's interest

in promoting efficiency.  *Modica*, 465 F.3d at 179-80.  That is, the Court balances the relative

importance of Plaintiff's First Amendment rights against Grief's and the Commission's interest in

the efficient furnishing of public services.  *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 192 (5th

Cir. 2005).

In some ways, this analysis is not apropos in the context it presents itself here – Grief's

motion for summary judgment based on qualified immunity – because this goes to whether

Plaintiff's email interfered with the Commission's efficiency. Perhaps this is why Grief fails to address this issue in either his Motion or Reply. Nevertheless, the issue cannot turn on Defendant's failure to present an argument because the burden is on Plaintiff to create a fact issue on his First Amendment retaliation claim. *Atteberry*, 430 F.3d at 253

As the Supreme Court has formulated the test, the Court looks, in balancing the two interests, to whether Plaintiff's email "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (citing *Pickering*, 391 U.S. at 568). There is no indication that Plaintiff's email touches upon these concerns. Apparently, no other Commission employee aside from Plaintiff knew about the email. Therefore, there would be no insubordination among the rank-and-file, nor could the email have caused infighting among them. Further, there is no indication that the email interfered with Plaintiff's work as a computer systems analyst, or with day-to-day operations, such that the Commission's ability to run the Texas lottery was impeded. Nor could the email be deemed to have "a detrimental impact on close working relationships" – it is clear that Grief and Plaintiff did not work together. And, insofar as other working relationships are concerned, there is no evidence that the email caused any detrimental impact; Plaintiff was fired only two days after sending the email, too short a time span for such an impact.

### c.    Causation

The final element is whether Plaintiff's email motivated Grief's adverse action. Grief argues that Plaintiff was *not* fired for sending the email to the state legislators, but for his insubordination

in refusing to answer Goebler's and Shaw's questions.  *See* Defendant Gary Grief's Motion for Summary Judgment, Exh. 1, at p. 2 (Clerk's Doc. No. 6-2) (Affidavit of Gary Grief stating that Plaintiff was fired for insubordination, not for sending  the email nor for his racial discrimination complaints); *see also* Defendant Gary Grief's Reply to Plaintiff's Response, at p.3 (arguing that the "Texas Lottery Commission had a legitimate right to ask" Plaintiff what the factual situation was surrounding his email).  The burden is on Plaintiff to raise a fact issue as to the causation element. *Atteberry,* 430 F.3d at 253.

    Plaintiff cogently points out that he was fired only two days after sending the email (the putative protected speech).  This is certainly strong circumstantial evidence that Plaintiff was fired for sending the email.  In *Evans v. City of Houston*, the Fifth Circuit found that a five day lapse between an employee's protected activity and an adverse action provided the requisite causal connection, and was enough to stave off summary judgment.  246 F.3d 344, 355 (5th Cir. 2001). The *Evans* Court held that "close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation."  *Id*. at 354;  *see also Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5 th Cir. 1997) (citing same principle).  This is exactly the type of situation in which summary judgment is precluded, given that, viewing the facts in the light most favorable to Plaintiff, there is ample evidence of causation.  *See Wallace*, 400 F.3d at 291 (holding that at summary judgment stage inappropriate to resolving issue of why appellant was fired because the court obligated to accept facts in light most favorable to Plaintiff).

### 2.      Whether Grief's Actions were Objectively Reasonable

Plaintiff cites a long line of cases holding that "public employees may not be terminated in retaliation for speaking out against government misconduct."  *See e.g., Wallace*, 400 F.3d at 291; *Warnock v. Pecos County, Tex.*, 116 F.3d 776, 780-82 (5th Cir. 1997); *Wilson v. UT Health Center*, 973 F.2d 1263, 1269-71 (5th Cir. 1992); *Branton v. City of Dallas*, 272 F.3d 730, 746-47 (5th Cir. 2001).  The upshot, or at least what the Plaintiff wants the Court to glean from this, is that this is evidence that Grief violated a clearly established right.  In *Hope*, the Supreme Court reiterated that qualified immunity can be overcome as long as "prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740.  The Court further stated that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* at 741.  The appropriate inquiry, therefore, is "whether the state of the law [at the time of the violation] gave [defendants] fair warning that their alleged treatment of [plaintiffs] was unconstitutional." *Id.*

The Court agrees with Plaintiff that the law at the time of Plaintiff's termination was sufficient to give Grief fair warning that firing someone for their speech on a matter of public concern was unconstitutional.  *See Wallace*, 400 F.3d at 291 (holding that this right is a clearly established one). Grief attempts an end run around the issue by simply asserting that the reason Plaintiff was fired was because of his refusal to answer Goebler's and Shaw's questions.[3]  For the

---

[3]In a rather odd argument, Grief also denies any personal involvement in the events leading to Plaintiff's claim, and cites to a number of cases for the proposition that §1983 liability only attaches to those who were personally involved.  *See e.g., Lozano v. Smith,* 718 F.2d 756, 758 (5th Cir. 1983).  Certainly, Grief is correct insofar as the black-letter rule goes, but no one disputes that Grief was the person who fired Plaintiff (and as Acting Executive Director made the final decision to do so).  It simply doesn't matter that Grief was not in Plaintiff's office when Goebler and Shaw were questioning him for that is not the event that Plaintiff complains of.

same reasons set forth in this Report and Recommendation under the preceding section ("Causation"), Grief's argument does not get him to summary judgment. Again, the Court is obligated to assess the facts in the light most favorable to Plaintiff, and, as analyzed above, he has created a material fact issue as to whether he was fired because of the email. To put it another way, if Plaintiff's version of the events is correct (and on this point the Court expresses no opinion), then Grief violated Plaintiff's clearly established rights and acted in an objectively unreasonable fashion.

## V.  RECOMMENDATION

Based on the above, the Magistrate Court **RECOMMENDS** that the District Court **DENY** Defendant Gary Grief's  Motion for Summary Judgment.  *See* Clerk's Doc. No. 6.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 17th day of November, 2006.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE